Good morning, Your Honors. My name is Jane Lee, and I represent the defendant, Jerome Hudson, in this case. Your Honors, this case is about the armed career criminal statute after Johnson. At the time the defendant's original brief in this case was filed, Johnson had not been decided, and neither had Wendleton. Defendant was charged below as an armed career criminal. Defendant had five possible predicates for armed career criminal. The court found, based on three of those predicates, the defendant was an armed career criminal. One of those predicates was larceny from the person, which, after Johnson, no longer qualifies as a violent felony. What about his previous that they didn't consider? Doesn't that fill in the hole? Well, Your Honor, defendant argues that assault with a dangerous weapon, which is one of his previous, and possession of, possession with intent to distribute, neither one of those qualify as violent, as serious drug offenses or violent felonies. As for the armed, as for the assault with a dangerous weapon, this court has said, in both Ame and Wendleton, that assault with a dangerous weapon can be committed recklessly. They say that it's a general intent crime, and that it can be committed two ways. Intentional and unjustified use of force against a person, or the intentional commission of a wanton and reckless act. Now, both Ame and Wendleton say, well, those are two both really intentional mens reas. They're not reckless. But the second mens rea, the intentional commission of a wanton or reckless act, is a reckless mens rea. You intend the act, but you're reckless as to the consequence, which is the definition of a reckless mens rea. And, in fact, the Fish Court, this court in the United States versus Fish, found that that was, in fact, a reckless mens rea. You intend the act, but you're reckless as to the result or the consequences. And Fish not only found that it was a wanton and reckless, that this was a reckless act, but they also found that it didn't constitute use of force under the force provision of ACCA. Because reckless conduct is not use of force in the way Congress meant. When Congress said use of force, they meant active agency, and reckless conduct does not satisfy that criteria. Now, Fish was under a different statute. It was under 16B and not under the Armed Career Criminal Statute. But that doesn't matter for the reason because Fish was interpreting the phrase use of force. And that's exactly what we're interpreting here, the phrase use of force. Now, Fish said it was deciding its case under, and Fish said, oh, wait, my reasoning doesn't apply to ACCA. Because, but they were talking about ACCA's residual clause, which is no longer good law. They weren't talking about ACCA's force clause. So that, so assault with a dangerous weapon doesn't qualify as a violent felony for that reason. Maybe I probably missed something, but the 1996 ADW conviction, he was indicted for violation of Chapter 265, whoever by means of a dangerous weapon commits an assault upon another shall be punished. Doesn't that, isn't that fairly clear that it was, it was not reckless, it was that he was deliberately attacked somebody? Well, no, actually, Your Honor. Massachusetts case law, Massachusetts statutory laws are very different. They don't define the elements of the crime in the statute. They define it in case law. So that is really a penalty statute, and it just says assault. But it doesn't tell you what assault is. It just says assault with a dangerous weapon. But case law, Your Honor, which really defines the elements of the crime, and it's the elements of the crime that we have to look at here under Taylor. You look at, only look at the elements of the crime. And case law in Massachusetts defines those elements. And those, one of those elements is that it has a general intent. It's a general intent crime. It can be committed recklessly, or it can be committed intentionally. That's in the case law. And both Wendelton and Ame recognize that, and they cite a Massachusetts case, Ford, for that proposition. But doesn't the term of imprisonment have to do with the fact that it was forced? That it wasn't a reckless act? Because the term of imprisonment, at least as I recall the statute, required that it was a forceful act. I don't think so, Your Honor. I think the term of imprisonment simply had to do with the maximum penalty, which would come into consideration under serious drug offense. But here, we don't look at the terms of imprisonment. We look at the elements, the elements of assault. What does Massachusetts consider the elements of assault with a dangerous weapon? And Massachusetts case law is clear that assault with a dangerous weapon is a general intent crime. And it can be committed recklessly. And I think the Supreme Court, in Leocal and Castleman, I think it's clear that the Supreme Court has said that negligent and accidental conduct cannot be use of force. And I think it's going to be clear that ten other circuits have said reckless conduct cannot be use of force. Ten circuits have said it. This circuit has not said that yet. But the Supreme Court granted cert in a recent case where that issue will come up. What does the use of force mean? And is reckless conduct the use of force? So I think that it's going to be, especially after Vosine and Armstrong, which the court just granted cert on. But even now, given this court's decision in Fish, reckless conduct cannot support, as a predicate, violent felony. Because it's not use of physical force. Also, your honor, defendant contests his conviction for a serious drug offense, intent to distribute. Now, this is another place where the Massachusetts statutes are confusing. Because they, the Massachusetts statute under which he was convicted, intent to possess, has two statutory maximums. In order to be a serious drug offense, the statute must have a statutory maximum of ten years. Or more. And in this case- Yes, Ms. Lee, your time is running short. I think we understand the two-tiered Massachusetts statute. But in Moore, which you concede is directly on all fours, this court has already rejected the very argument that you're making. And I understand you've got an argument that the Supreme Court's decision in Rodriguez somehow changes the legal landscape. But in a post-Rodriguez decision, this court's also rejected that argument. So why aren't we simply bound by the law of the circuit on this claim? Well, for one reason, your honor. Weeks decided the case, and their decision was very brief and very summary. The law of the circuit rule doesn't depend on how brief it is, as long as it's clear. What Weeks said is that post-Rodriguez, Moore is still good law. For all you have to say. Well, no, because Weeks referenced two statutes, your honor. And those two statutes, and they said, these two statutes are outside the statute of conviction. And the Supreme Court has said you can't look to external limitations. And that is not what happened in this statute. Their internal limitations- I know, but your argument at bottom, I understand that you think that Weeks got it wrong. But we don't have the authority to say that. Because you haven't pointed to any post-Weeks authority that would validate a decision to second-guess the Weeks panel. Well, your honor, if I get a dissent here, then I can move for an en banc- You can move for an en banc here without a dissent. You could have moved for an en banc before there was even a panel decision. But the thing we've got to do is decide here. And I've read your brief, I think, quite carefully. And I don't see where you've given us any basis on which we could say we declined to follow our earlier holding in Weeks. Well, your honor, the case of Karachi- I think I'm not going to pronounce it right. Neither can I, but don't try, because that case was decided before Weeks, not afterwards. But that case was decided after Weeks was argued and briefed. But it was decided before the Weeks decision came out. And our rule is that we can only deviate from a panel opinion if there is some subsequent controlling authority. Subsequent, not prior that the panel missed. It's clear that it wasn't controlling in the Weeks decision. But more importantly, your honor, in this age when mass incarceration is a serious blot on this criminal justice system, we need to revisit this issue. We are putting people in jail who had probationary sentences- You know what is an equally serious blot on the criminal justice system? Lawyers who try to drag mass incarceration into the adjudication of a particular case where it has no place. It simply is not relevant to these issues. And you know it, and I know it. No, I respectfully dissent, your honor. Thank you. Thank you. Good morning, your honors. May it please the court, Renee Bunker on behalf of the United States from the District of Maine. Ms. Bunker, could you clarify something structural for me? I can try. I understand that Ms. Lee has made very strong arguments about both an ADW conviction and a drug conviction, right? In the posture of this case, does the government have to succeed on showing that both of those convictions are predicates or only one of them? Both. We no longer have the larceny from a person- Okay, I just wanted to clarify that. Correct. We do have the armed assault with intent to rob or whatever the one that is not disputed. Both. And we submit that the law overwhelmingly supports that we will. Mr. Hudson, a quintessential armed career criminal who the district judge found shot at point-blank range, his victim multiple times with children nearby, I too will start with the assault with a dangerous weapon conviction. And of course, this court is bound by Wendelton and Am, which Judge Stahl, you authored. However, I will cut immediately to Fish as well. And for five reasons, we submit that Fish, one, doesn't undermine Wendelton, and it is also not dispositive on the question whether assault and battery with a dangerous weapon, ABDW, necessarily qualifies under the use of force clause. First, the government didn't argue in Fish that ABDW qualified under 16A's force clause, so the court didn't need to address it to the extent it made commentary regarding that issue. It was arguably dicta. As Fish itself said later in a different context, quote, principles of stare decisis do not preclude us from disclaiming dicta in a prior decision. Two, Fish's conclusion that ABDW didn't qualify under the force clause, as the appellant argued, was exclusively grounded in Johnson, the 2010 Johnson, holding that the force for actual was violent force. And the Fish court concluded, we see no reason to think that the same would not apply to 16A. But Johnson didn't address at all the attempted or threatened use of physical force, nor did Johnson address at all the use of a dangerous weapon in committing these crimes. To the extent Johnson even mentioned dangerous weapon, as the Wendelton court pointed out, it commented that ABDW is arguably a prototypical violent felony, unlike the offense of touching at issue in Johnson. Three, and this goes to Judge Stahl, your inquiry about the mens rea, Fish's mens rea analysis is both inapplicable here for ADW, assault with a dangerous weapon, and also we submit incomplete even with respect to ABDW. For an assault with a dangerous weapon, the state must prove, with regard to intent, under the attempted battery theory, there are two theories, as Wendelton court describes, under attempted battery assault, or ADW, the state had to prove an intent to commit a battery. For the other theory, the immediately threatened battery theory of assault, the state had to prove an intent to put the victim in fear of an imminent battery. In this case, by means of a dangerous weapon. Now, I say incomplete also with regard to the Fish analysis, because if the court goes and reads, and I'm sure you will, more closely, the Hart opinion that's cited, and I think it's the Appleby State case, from which these elements, it is elements we all agree that we are focused on, even the elements of, the mens rea elements of ABDW require, as footnote seven in Hart is a good explanation, require that the state not only prove those two alternative, either intentional or reckless theories of ABDW, but also, as the Hart court made clear, and I think it's Appleby in the state court, the state has to prove the intent to commit the lesser included offense of assault with a dangerous weapon. So that includes the two intentions that I just described, which is a lot of intentionality going on here, regardless of whether it's ADW, I mean, assault with a dangerous weapon, or assault and battery. Fourth, and most disconcerting, perhaps about Fish's discussion and analysis, is that in our view it seriously undermines the significance of the fact of the dangerous weapon, which, as was highlighted in Wendleton, regardless of whether we're talking about assault or assault and battery with a dangerous weapon, it is critical, the Wendleton court said, that the statute in issue is assault by means of a dangerous weapon, or AB, battery by means of a dangerous weapon. By focusing arguably too myopically on the offensive touching part and the purported non-harmful battery that results, the Fish court, in our view, ignored the teachings of the SJC in Burke, for instance, that even an offensive touching with a dangerous weapon is harmful battery. It is, particularly the way Massachusetts defines the dangerous weapon, as a weapon either designed to produce death or grievous bodily harm, or as used by the perpetrator to produce serious bodily harm. So even an offensive touching under Wendleton and under the Massachusetts law, and under the Raymond Silva case from the Tenth Circuit, Wendleton's side, even an offensive touching with a dangerous weapon is threatening the use of violent force when the weapon is defined as it is under Massachusetts law. For instance, the grazing of the knife across, I think Raymond Silva has a nice discussion of this, I'll just use it, the grazing of the weapon, the knife across the victim's skin, is at a minimum a threat that the knife will be used more grievously in the future to create serious bodily harm. And that, as the Wendleton court pointed out, it is that fact of the dangerous weapon that imports the violent force that Johnson requires into the otherwise overbroad simple assault and simple assault and battery statutes that are discussed in Martinez, the other case that Appellate relies on. And finally, fifth, Leocal, as the Appellant raised. In our view, and as discussed in the Raymond Silva case, Fish improperly imported Leocal's mens rea analysis into what there became a residual analysis case in Fish, where the Leocal court, the Supreme Court there, made clear that it was not addressing threatened, attempted or threatened use of physical force. And with that, I will submit on that issue unless there are further questions. And we agree with Judge Selle's information that as to the drug statute, the court is also bound by more and weeks. And unless there are any further questions, we will submit in the briefs. Thank you. I ask that you affirm.